**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**SUSANA VELA,**

      **Plaintiff,**

v.                                                                  **Case No: 5:16-cv-488-Oc-PRL**

**COMMISSIONER OF SOCIAL
SECURITY**

      **Defendant.**

_____

## ORDER

Plaintiff appeals the administrative decision denying her applications for Disability Insurance Benefits and for Supplemental Security Income Benefits. Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED.**

I.     **BACKGROUND**

In November 2012, Plaintiff filed an application for benefits, alleging disability beginning October 7, 2009. (Tr. 201–11, 233). The claims were denied initially, and upon reconsideration. (Tr. 131–56). At Plaintiff's request, a hearing was held before Administrative Law Judge Deborah A. Arnold (the ALJ), who issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 20–66, 157).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 25). At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, fibromyalgia, degenerative disc disease, hypothyroidism, and anemia. (Tr. 25–28).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28–29). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than light work as defined in 20 CFR § 404.1567(b): "The claimant can lift twenty pounds occasionally and ten pounds frequently; and sit, stand, and/or walk throughout the workday. The claimant can occasionally climb, stoop, and crouch but should not work in concentrated dust, fumes, or gases." (Tr. 29–33).

At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a Salesperson of Horticultural & Nursery Products. (Tr. 34–35). In addition, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform—Cleaner, Housekeeping; Marker; and Checker 1 (and assuming a more limited RFC, she could perform the jobs of Addresser; Escort Vehicle Driver; and Cutter & Paster Press Clippings). (Tr. 36–36).

Thus the ALJ found that Plaintiff was not disabled from the onset date through the date of the decision. (Tr. 36). The Appeals Council then denied Plaintiff's request for review. (Tr. 1–7). With her administrative remedies exhausted, Plaintiff filed the instant appeal. (Doc. 1).

## II.    STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20

C.F.R. §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

## III. DISCUSSION

Plaintiff raises a single argument on appeal: the ALJ improperly considered the opinion of her treating physician Anuj Sharma, D.O. As explained *infra*, the ALJ's decision should be affirmed.

The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The

opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips* v. *Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240–41.

On September 15, 2014, Dr. Sharma completed a *Medical Source Statement of Ability to do Work-Related Activities (Physical)* form. (Tr. 596–98). On that form, the doctor checked boxes indicating that Plaintiff was more limited than provided for by the RFC.

According to Dr. Sharma, Plaintiff can lift and carry up to ten pounds occasionally and frequently; stand and walk for at least two hours in an eight-hour workday; sit for about four hours in an eight-hour workday; and is limited in her ability to push and pull in both her upper and lower extremities. (Tr. 596–97). Dr. Sharma checked further boxes indicating that Plaintiff can only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, and never kneel, crouch, or crawl. (Tr. 597). According to Dr. Sharma, these limitations are due to Plaintiff's cervical and lumbar spine impairments and are supported by Plaintiff's MRIs. (Tr. 597). The doctor also checked boxes indicating that Plaintiff is limited in her ability to tolerate vibration and hazards due to her impaired mobility. (Tr. 598).

On that same day, Dr. Sharma also completed a *Medical Source Statement of Ability to do Work-Related Activities (Mental)* form. (Tr. 599–600). On that form, the doctor checked a box indicating that Plaintiff's ability to maintain concentration and attention for extended periods of

time is poor due to her back impairments.[1] (Tr. 599). I submit that the ALJ, in her decision, articulated good cause for discounting Dr. Sharma's opinion.

Indeed, the ALJ gave two reasons for discounting the opinion. First, the ALJ noted that Dr. Sharma began treating Plaintiff in July 2014 (Tr. 33), which is almost five years after the alleged October 2009 onset date and no more than three months before the ALJ rendered the decision at issue in September 2014. Contrary to Plaintiff's assertion that the length of treatment is not a factor that the ALJ may properly consider when evaluating a medical opinion, the Social Security Regulations explicitly state that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2)(i); 416.927(c)(2)(i).

And to the extent that Plaintiff faults the ALJ for not giving more weight to Dr. Sharma's opinion given his status as a medical specialist, a Board Certified Physical Medicine and Rehabilitation physician, see 20 C.F.R. § 404.1527(c)(5) (" We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."), it is well settled that as to the factors (like length of treatment and the doctor's specialist status) set forth in the regulations governing the evaluation of medical opinions, "the ALJ is not required to explicitly address each of those

---

[1] Dr. Sharma did not, however, check the box that would indicate that this inability to maintain concentration and attention would actually affect Plaintiff's "ability to understand, remember, and carry out instructions." (Tr. 599). Further, though Plaintiff mentions here that Dr. Sharma opined she had a poor ability to maintain attentions and concentration for extended periods (Pl.'s Br. at 11), Plaintiff does not address the ALJ's finding that "any assessment of [Plaintiff's] mental abilities or limitations is beyond [Dr. Sharma's] area of expertise" and is thus given little weight. (Tr. 27). More to the point, the ALJ found that Plaintiff's "medically determinable mental impairments of anxiety, depression, and a history of alcohol abuse, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe," (Tr. 25–28), a finding Plaintiff does not challenge here.

factors." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [or her] decision.").

The ALJ must, instead, simply provide good cause for rejecting a treating physician's opinion. With all this said, to the extent that the ALJ discounted Dr. Sharma's opinion due to the length of time the doctor had treated Plaintiff, the ALJ was free to do so. *See Boris v. Comm'r of Soc. Sec.*, No. 5:15-CV-434-OC-PRL, 2016 WL 4651377, at *3 (M.D. Fla. Sept. 7, 2016) (acknowledging the ALJ's statement that a doctor had treated the plaintiff for only four months).

Second, the ALJ stated that Dr. Sharma's opinion is inconsistent with the substantial evidence of record, including her "intact gait noted throughout the record." (Tr. 33). Plaintiff complains here that the ALJ failed to cite any factual support in the record to support this statement and, thus, the statement is conclusory and fails to establish the requisite good cause. I disagree. A plain reading of the decision shows that—prior to addressing Dr. Sharma's opinion—the ALJ addressed, summarized, and cited ample evidence enabling the Court to conclude that substantial evidence supports the decision at issue here.

For example, the ALJ accorded great weight to the opinion of state agency physician P.S. Krishnamurthy, M.D. (Tr. 33). Dr. Krishanmurthy opined, consistent with the RFC, that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; could work without any limitations on pushing, pulling, and carrying (other than listed above); could occasionally climb (ladders, ropes, and scaffolds), stoop, and crouch; and could frequently kneel and crawl; and was unlimited in climbing ramps and stairs and in balancing. (Tr. 106–09; 123–26). Notably, Dr. Krishanmurthy also reviewed MRI findings.   (Tr. 108, 125).

The ALJ assigned this opinion great weight as it was "consistent with the substantial evidence of record, including the claimant's rather extensive activities of daily living and her conservative treatment history." (Tr. 33). As to Plaintiff's daily activities, the ALJ noted that "on occasion, the claimant has admitted that she takes care of her grandchildren, drives short distances, prepares her own meals, shops for groceries, gardens, goes out to dinner, and does light housecleaning" and also had "admitted walking to a nearby park to visit with a friend." (Tr. 30, 50, 55–56, 247, 279, 280–81, 288, 370, 435, 577).

As to her level of treatment, the ALJ noted that the objective medical evidence "reveals sporadic and conservative treatment with no evidence of recurrent emergency room visits or hospitalizations." (Tr. 30); *see generally Dyer*, 395 F.3d at 1211 (11th Cir. 2005) (noting that the ALJ found that the plaintiff's "pain had not require[d] routine or consistent treatment, and he often went for months or years between complaining of this pain to his physicians"); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (noting that the ALJ found that plaintiff had had conservative treatment); *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (noting that the ALJ found that the plaintiff had gaps in treatment). For example, the ALJ noted that though "claimant alleges that she became unable to work on October 7, 2009, there is no evidence of medical treatment from that date until May 19, 2010, when the claimant classified her pain level as zero, and admitted caring for her grandchildren." (Tr. 30, 370–71). The ALJ also noted another gap in the medical evidence from June 2011 to May 2012. (Tr. 31, 390–91, 387–89). And yet another gap in the evidence, as the ALJ noted, occurred from April 2013 to March 2014. (Tr. 32, 496, 510–11, 525).

Further, the decision at issue documents an instance showing that despite a surgeon's January 2013 recommendation that surgery may be able to repair her cervical spondylosis, Plaintiff

declined surgery. (Tr. 32, 438–39). After that surgical consultation, Plaintiff participated in physical therapy, but was soon thereafter discharged the next March for failure to schedule further appointments after attending six sessions. (Tr. 32, 474–85, 486). Notably, that same March she denied any neurological or muscular complaints at that time. (Tr. 32, 445).

Additionally, the ALJ explicitly noted how Dr. Sharma's opinion is inconsistent with the evidence of record indicating that Plaintiff's gait was intact. (Tr. 33). As the ALJ noted, in June 2011, Plaintiff "was ambulatory with perfect gait and displayed normal range of motion of the back, no neck tenderness, and normal sensation and motor strength." (Tr. 31, 390–91).

In May 2012, an exam showed she had no neurological deficits. (Tr. 31, 388). She displayed a normal range of motion of the back and musculoskeletal system in September 2012 and the following December. (Tr. 31, 379–80, 383–84). The next January "she demonstrated a normal gait." (Tr. 32, 464–66). As noted by the ALJ, the only finding of an abnormal gait assessment (antalgic but independent) in the record was that of Dr. Sharma a few months before the decision at issue was rendered. (Tr. 33, 580, 588).

For these reasons, there is, as the ALJ set forth, substantial evidence to support the weight accorded to Dr. Sharma's opinion.

## IV.    CONCLUSION

For the reasons stated above, the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE** and **ORDERED** in Ocala, Florida on July 31, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties